10

## Permits for Sunday Concerts

ARNOLD, Deputy Attorney General, April 11, 1934.—The Act of June 2, 1933, P. L. 1423, authorizes the Department of Public Instruction to issue permits for concerts or series of concerts to be held on Sundays, and provides for the collection of a fee of $5 for each permit. The act also requires the sponsors of permitted concerts to render to the department statements of receipts and expenditures of the concerts.

You have inquired (1) whether more than one fee of $5 should be collected where the application is for a permit for a series of concerts, and (2) whether you should require a financial statement to be filed after each concert of a series included in one permit, or only a single statement after the close of the series. You also ask whether the net receipts of each concert of a series are to be considered separately in determining whether there is any liability to pay over any part of the receipts to your department.

Section 2 of the act provides:

". . . should the amount collected for admission fees to any such concert exceed the actual expenses for light, heat and compensation to ushers, janitors and musicians, the excess shall be paid to the Department of Public Instruction of this Commonwealth to be employed by it for such public music purposes as it may deem proper."

Section 3 of the act contains these provisions:

"The Department of Public Instruction may authorize concerts, or series of concerts, to be rendered and broadcast as herein provided; . . . Whenever the said department shall have authorized any such concert, or series of concerts, to be rendered and broadcast, it shall issue a permit, setting forth its authorization thereof, which permit shall also state the date or dates, hour or hours when, and place or places where, such concert, or series of concerts, shall be held. The Department of Public Instruction shall make a charge of five dollars for every permit issued under the provisions of this section."

Section 5 provides:

"Any person or persons to whom the Department of Public Instruction shall have issued a permit under the provisions of this act shall keep an accurate account of all moneys received and expended in connection with the rendering and broadcasting of the concert, or series of concerts, authorized in such permit, and the Department of Public Instruction, by its duly authorized agent, shall have the right at any time to inspect and audit such account. In order to enable such audit to be made, the person or persons having charge of such

account shall render a complete, verified statement of receipts and expenditures within thirty days after each concert to the Department of Public Instruction."

In our opinion, section 3 of the act makes it clear that but one fee of $5 is to be collected for each permit, whether it be for a single concert or a series.

The language of the act is not consistent throughout as to the accounting for receipts and expenditures of concerts and the determination of net proceeds. Section 2 (before any mention has been made of series of concerts) speaks of excess proceeds of "any such concert". Section 3 authorizes permits for "concerts, or series of concerts". Section 5 requires accurate accounts to be kept as to the receipts and expenditures of "the concert, or series of concerts, authorized in such permit", but later directs the filing of "a complete, verified statement of receipts and expenditures within thirty days after each concert".

A literal and narrow construction of isolated phrases in these sections might lead to a conclusion that reports must be filed and net proceeds determined with respect to each separate concert, whether part of a series or not. But in many cases such a construction would impose conditions which would be extremely unreasonable.

Many, perhaps most, concert series, are financed as single enterprises. Subscriptions or tickets are sold for the entire series, and many of the expenses are contracted for the series as a whole. Consequently, in most instances, it would be practically impossible to determine the net profit, if any, of a single concert in a series. It would be equally impossible to furnish to your department a "complete" statement of receipts and expenditures of each concert separately.

In In re Foster's Petition, 243 Pa. 92, 98 (1914), the Supreme Court said:

". . . Where an adherence to the strict letter would lead to injustice, to absurdity, or to contradictory provisions, the duty devolves upon the court of ascertaining the true meaning; 36 Cyc. 1107. It is fundamental that if, giving to the words of an act their literal or natural meaning, the conclusion reached would be unreasonable or absurd, some other meaning within the reasonable scope of the words may be adopted to avoid that result, if it appears that such other meaning may probably have been the one intended: Rossmiller v. State (Wis.) [114 Wis. 169], 91 Am. St. Rep. 910, 913. It is a settled rule of construction that the legislature will be presumed to have intended what is reasonable and effectual, and not what is productive of absurd or anomalous consequences or is impossible and incapable of execution. . . ."

It is clear that the legislature intended to provide for series of concerts, and since the term "series" is used in section 5 of the act, it is apparent that the series was to be recognized in the accounting procedure as well as in the issuance of permits. The legislature perceived the necessity of making different provisions for series from those made for single concerts. It contemplated a workable system.

Therefore, we conclude that a reasonable construction of the inconsistent language of the act which will carry out the real purpose of the legislature is that net profits of a series of concerts included in one permit are to be determined, and accounts are to be kept and reports made on the basis of the entire series only.

One other matter must be considered. What constitutes a series of concerts within the meaning of the act?

It is probably not possible to lay down a definition which will apply to every case. But, generally speaking, in order to constitute a series within the meaning of the act, there must be more than a mere succession of concerts having little or no unified financial basis. There must be substantial financial unity of all

the concerts—with receipts and expenditures based on the series as a whole. Perhaps the clearest evidence of such unity would be the sale of series subscriptions or tickets as a material part of the financial plan.

To summarize:

(*a*) Only one fee of $5 may be charged for a permit to hold a series of Sunday concerts.

(*b*) Where a permit is issued for such a series, the net profits are to be calculated, the accounts kept, and the reports made on the basis of the series as a whole, and not as to each concert.

(*c*) In order to constitute a series within the meaning of the act, a number of concerts must be based on a more or less unified financial plan. A mere succession of disconnected concerts is not a series.

From C. P. Addams, Harrisburg, Pa.